WESTERN COAL & MINING COMPANY *v.* JONES.

Opinion delivered April 15, 1905.

1. APPEAL—NECESSITY OF BRINGING UP ALL THE EVIDENCE.—Where a change of venue is asked on the gound of prejudice against plaintiff and his cause of action, and the bill of exceptions shows that the court heard evidence to disprove such prejudice, but does not bring it up, it will be presumed on appeal that the trial court did not abuse its discretion in refusing the change of venue. (Page 82.)

2. INSTRUCTION—FAILURE TO SUBMIT REAL ISSUE.—Appellant cannot complain that the court failed to submit the real issue to the jury if it failed to ask any instruction thereon. (Page 85.)

3. SAME—ASSUMPTION OF DISPUTED FACTS.—Refusal to give instructions which assumed disputed questions of fact was not error. (Page 86.)

4. NEGLIGENCE—GENERAL INSTRUCTIONS.—Appellant cannot complain that the court's instructions on negligence were general if it failed to ask specific ones. (Page 86.)

5. MASTER AND SERVANT—SAFE PLACE.—An instruction that the defendant company owed no duty to plaintiff, its employee, to keep the room adjoining his free from gas, and that it fulfilled its duty to him if it kept his room and place of work free from gas was properly refused, as one of his duties was to open an air course into such adjoining room, and he was as much interested in the ventilation of that room as his own. (Page 86.)

6. MINE—VENTILATION FROM GAS.—Kirby's Digest, § 5340, defining the amount and measure of the ventilation of mines, and requiring that a certain amount of air "shall be circulated to the face of every working place throughout the mine, so that said mine shall be free from standing gas of whatever kind," contemplates that the air shall be carried to the extremest point where the pick falls. (Page 86.)

7. INSTRUCTION—SINGLING OUT FACTS.—A request for instruction which singles out isolated facts was properly refused. (Page 86.)

Appeal from Sebastian Circuit Court, Greenwood District.

STYLES T. ROWE, Judge.

Affirmed.

J. F. Jones sued the Western Coal & Mining Company, a corporation engaged in operating a coal mine. The complaint alleged that plaintiff was working in defendant's mine, and was injured in an explosion caused by defendant's neglect and failure to ventilate the mine. The answer denied the charges of negligence. The evidence is sufficiently stated in the opinion of the court. The following instructions were requested by defendant, and were refused by the court, viz:

"1.   Under the law and evidence in this case, the plaintiff is not entitled to recover, and you are instructed to return a verdict in favor of defendant.

"2.   If the jury believe from the evidence that the accident by which plaintiff was injured would not have happened if the shot fired by plaintiff had not blown into the adjoining room, in which there was gas, and in which miners were prohibited from working until same could be properly ventilated, then plaintiff cannot recover, even though the evidence shows he did not intend that it should blow through, and did not believe or know, when he prepared and fired same, that it would do so.

"3.   The defendant owed no duty to plaintiff to keep the room adjoining his, and in which he was not required to work and not required to enter in order to do his work, free from gas. It fulfilled its duty to him if it kept his room and place of work free from standing gas, and in a reasonably safe condition; and if the evidence shows that the plaintiff was injured by igniting gas in Everett's room, adjoining his, by reason of a blown-out shot from plaintiff's room, which he prepared and fired, then plaintiff is not entitled to recover.

"4.   If the jury believe from the evidence that it was plaintiff's duty as a miner to keep informed as to the probable distance from the face of the coal from where he was working in the breakthrough to the face of the adjoining room, and that he should not have placed the shot, the point of which should be so near the face of the adjoining room as to blow out when fired into that room, then plaintiff is not entitled to recover, and your verdict should be for defendant.

5.   If the jury believe from the evidence that it was against the rules of the company for the point of a shot to go beyond the cutting, that this rule was generally known and observed among the miners in defendant's mine at the time plaintiff was injured, and that plaintiff, in violation of this rule, drilled the hole for his shot so that the point went about eight inches beyond the cut, and by reason of its being bored this distance beyond the cutting, when the shot was fired it blew into the adjoining room, ignited the gas therein and burned plaintiff, then he is not entitled to recover.

"6.   If the jury believe from the evidence that plaintiff was burned by the flame or fire from a shot fired by him, and which blew into the adjoining room, then you should return a verdict for the defendant.

"7.   If the jury believe from the evidence that, on account of insufficient ventilation and the accumulation or probable accumulation of gas in the room adjoining the one in which plaintiff was at work, defendant's fire boss regarded it prudent to 'deadline' the said adjoining room, and to keep same from being worked until proper ventilation could be secured, so as to remove the gas therefrom, and such as might accumulate therein, and in order to prevent any one from working in or entering said room, did 'deadline' it on the morning the plaintiff was injured; that Everett, the miner who had been working in said room, did not work in there the day on which plaintiff was hurt, because same had been 'deadlined,' and because of the accumulation of gas therein; that the fire boss on that morning, and before plaintiff was hurt, asked plaintiff where Everett was, and if he intended to make or finish his breakthrough, to which plaintiff replied that he did not know, that Mr. Mayes had cut his (meaning plaintiff's) breakthrough, and that he reckoned he would have to cut or finish Everett's; that the fire boss then told him to go ahead and cut it and to finish it, or he wanted it finished, that day; that plaintiff then began to cut same, and, during the progress of the work, put in a shot in making said breakthrough for the purpose of shooting down the coal, but, on account of said shot being placed too near the face of the

coal in Everett's room, instead of the shot's doing its work as intended, and accomplishing the purpose for which it was prepared, it blew through into Everett's room, and by reason of this ignited gas in said room, and said gas alone, or in conjunction with the flame from this shot, burned plaintiff, then, under this state of facts, if the accident and injury occurred under the circumstances above detailed, plaintiff would not be entitled to recover.

"8. If the jury believe from the evidence that plaintiff's injuries were caused by and on account of his accidentally or unintentionally putting the point of a shot so near the rib of the adjoining room that it blew through and caused the explosion, then this would be an accidental injury for which defendant is not liable.

"9. The mere fact that the room adjoining plaintiff's was on the day of the injury 'deadlined,' or that there was gas in said room, of itself, is not sufficient evidence to warrant the jury in finding a verdict for plaintiff.

"10. If the jury believe from the evidence that it was the rule of the mine in which plaintiff worked that the point of no shot should extend beyond the cutting, that this rule was generally known by the miners at work therein, and that it was the general rule and custom for the said miners not to put the point of their shots "into the hard," or beyond the cutting; that plaintiff, in violation of this rule, put a shot in the breakthrough, so that the point extended several inches beyond the cutting, and that in consequence of this the said shot blew out into the next room, and caused the explosion by which he was hurt, plaintiff would not be entitled to recover in this action.

"11. If the jury believe from a fair preponderance of the evidence that, had the shot fired by plaintiff in the breakthrough not blown out into the adjoining room, there would have been no explosion, and he would not have been injured, and they further believe from a fair preponderance of the evidence that the placing of the shot so near the rib of the adjoining room that it blew through was caused by the bad judgment of plaintiff in determining the distance the point of the shot was from said rib, or that the said shot was accidentally or unintentionally so

placed, then plaintiff's injuries were the result of an accident for which defendant is not in law liable."

The court gave in charge to the jury Sandels & Hill's Digest, § § 5048 and 5058, and further instructed them as follows:

"4. The court charges you that, before the plaintiff can recover in this action, the burden is on him to prove by a preponderance of the evidence that the defendant willfully failed to. comply with section 5048 of Sandels & Hill's Digest, as set forth in the instructions, and that on account of such willful failure gas accumulated in the mine, and that while plaintiff was making an opening from his room into another room in said mine under the order of the defendant, and that the gas so accumulated ignited from a shot fired while he was making said breakthrough or opening from his room into another room in said mine, and that on this account he was injured and damaged as complained of by him. .

"6. The court further charges you that it was the duty of the plaintiff to obey all reasonable commands of the defendant. In obeying the commands, if the plaintiff did so, to make an opening from his room into that of another, if such command was given him, then, if the plaintiff had no information or knowledge to the contrary, he had a right to presume that the defendant had done and would do its duty toward him, and he could rely upon the judgment and discretion of the defendant in its performance. When the plaintiff was ordered, if he was, by the defendant to make the opening from his room into another room in said mine, and the risk or danger of obedience was not obvious or apparent to him, then the plaintiff could ordinarily act upon such presumption and reliance and obey such order, if given, without being chargeable with contributory negligence or with the assumption of the risk of so doing. The plaintiff was not required to stop to ascertain the dangers and risks incident to obedience, if they were not already patent or were known to him; but the plaintiff might, in confidence that the defendant had done and would do its duty to him, act at once in obedience to the defendant. If the order was made by the defendant to make the opening from his room into another room, then such

order was an implied assurance to the plaintiff that there was no danger in obeying it, and he could act accordingly, without subjecting himself to the imputation of negligence.

"If the plaintiff was acting in obedience to the order of the defendant to make said opening, and in so doing he was injured, then he can recover damages from the defendant, unless the defendant was guilty of no negligence.

"If, however, the danger or risk of injury from obedience was so great and so obvious and apparent to the plaintiff as to render it, under the circumstances, unreasonable and imprudent for him to obey, but he voluntarily obeyed and was injured, then he would be guilty of contributory negligence, and without remedy against the defendant, and in such event your verdict should be for the defendant.

"You are instructed that the plaintiff assumed all the ordinary and usual risks and hazards incident to his employment, but he did not assume any risks which were caused, if any, by the negligence of the defendant. If you find from the evidence that the defendant failed to ventilate its mine as set forth in instruction No. 1, and on account of such failure gas accumulated in said mine, and was ignited by a shot made by the plaintiff while making an opening from his room into another room in said mine in obedience to the order of the defendant, and the injuries sustained to the plaintiff were caused by the burning gas, then the court tells you that your verdict should be for the plaintiff, if you believe from the evidence at the time of the injuries, the plaintiff was using ordinary care for his own protection."

The jury returned a verdict for plaintiff. Defendant has appealed.

*Ira D. Oglesby,* for appellant.

The court erred in granting the change of venue. Sand. & Hill's Dig. § § 5048, 5058. The servant must obey the rules established to promote his safety. 95 U. S. 439; 122 U. S. 195. Instructions should not be given unless there is evidence to support them. 24 Ark. 371; 41 Ark. 393; 62 Mo. 70; 73 Tex.

124; 24 S. W. 440; 16 Ark. 628; 25 Mich. 397; Maxwell, Pl. & Pr. § 292; Elliott, Gen. Pr. § 899; 71 Fed. 258; 83 Fed. 631. Evidence of collateral facts should not be admitted. 1 Green. Ev. 51, 448; 45 Kan. 447; 11 Am. & Eng. Enc. Law, 503; 97 Fed. 413; 110 U. S. 47; 148 U. S. 664; 73 Fed. 774; 114 Fed. 458.

*Robert A. Rowe* and *T. B. Pryor,* for appellee.

The granting of the change of venue was proper. Kirby's Dig. § 7998; 85 S. W. 242; 48 Cent. Dig. § 64. The disobedience of the servant must have been the proximate cause of the injury, to relieve appellant. 110 Mass. 240; 2 Macq. H. L. Cas. 30; 33 Eng. L. & Eq. 1; 56 Ark. 196. There was evidence to support the instructions. Kirby's Dig. § 5350.

HILL, C. J. The appellee, a coal miner, sued the appellant mining company for damages for personal injuries received in the mine from an alleged gas explosion caused by negligent failure of the appellant to properly ventilate the mine. The Reporter will abstract the pleadings and instructions discussed.

1. The first question met is the denial of appellant's petition for change of venue. The petition was in due form, properly verified, and presented in apt time. The record as to its disposition is as follows: "And the court, after hearing the evidence and being well and sufficiently advised in the premises, doth overrule said motion, and the defendant excepts." The bill of exceptions recites that "upon the hearing of this motion at request of plaintiff, and over the objection of defendant, the panels of the petit jury were called for examination, to which action of the court in calling for and examining the jurors upon said panels the defendant at the time excepted." Thereupon each juror was asked (without being sworn) if he had any prejudice against the defendant, and if he was acquainted with the plaintiff. All these questions were answered negatively except in one instance; one juror knew the plaintiff by sight. These questions were all over the objection and exception of defendant. "Thereupon," to follow the language of the bill of exceptions, "the petition for change of venue was denied." Whether this was all the evidence adduced on the hearing, or only

part of it, is not clear.   Whether these were the only questions to
the jury when they were examined does not affirmatively appear.
It is urged that this examination of the panel of the jury does not
overcome the verified petition, but the record does affirmatively
show that evidence was heard, and, the bill of exceptions failing
to show that these questions asked the jurors were all the evi-
dence before the court, the presumption is that there was evi-
dence to sustain the finding.   The examination of the jury along
the line indicated would be merely a circumstance of more or less
probative force tending to negative the allegations of prejudice
against the defendant or its cause of defense.   To determine
whether a change of venue should be granted merely upon state-
ments from the jurors that they have no prejudice against the
defendant is equivalent to holding that if a qualified jury can
be selected from the panel the change of venue must be denied.
Manifestly, this is not the law.   Jurors are as competent as other
persons to testify to the nonexistence of prejudicial sentiment in
the county, but the decision of the question should not hinge on
whether these jurors are, or are not, themselves prejudiced;
and it would be better to get this evidence outside the jury box.
Whether these answers elicited from the jury would of them-
selves be sufficiently probative to overcome the petition and sup-
porting affidavits need not be and is not determined, because in
the state of the record the presumption is that there was sufficient
evidence to support the finding.

2.   The plaintiff proved substantially these facts:   He was
working in room 4, and adjoining his room was room 5, open-
ing into a common entry.   The progress of the work called for
an opening to be made from his room to room 5 for purposes
of ventilation.   This opening, or "breakthrough" as it is called,
had to be made by Jones, as the miner in room 3 had made the
breakthrough to Jones's, rendering it his turn to continue the
air course and connect with 5.   On the day before the accident,
in preparation of this work, Jones and the miner in 5, Everett,
made soundings to ascertain the width of the coal between the
rooms, and they decided, as a result of such test, that the dis-
tance was twelve feet.   Thereafter on the same day of the sound-
ing Jones put in a "widening out" shot in his room, to blast out
part of this intervening coal.   His blast took from the wall about

five feet, as he thought. The next day, Everett was not in his room (No. 5) and the "fire boss," who represents the master in matters of ventilation, came to Jones's room, and inquired for Everett. He was new to this mine, and supposed that Everett should make the breakthrough to Jones, but, learning that it was Jones's turn to make the breakthrough, told him to do it that day. The "fire boss" "deadlined" Everett's room, which is a method of marking the room as dangerous and forbidding entrance thereto. He put the marks usually signifying gas, but explained that he did not find gas in the room; merely that it had gone to the point when the air was bad on account of lack of ventilation, and he "deadlined" it to keep the miner out till the breakthrough was made. There is no evidence that Jones had knowledge of gas in room 5, or that it was "deadlined." He merely knew that Everett was not in the mine that day, and the fire boss told him to complete his breakthrough that day. Jones went to work to make the breakthrough. He mined away coal to the depth of four feet, and above that bored a hole eighteen inches beyond the depth he had mined, and put his shot consisting of a load of one pound of powder into it. After properly tamping the shot and attaching and lighting the fuse, he retired ninety feet, well back into the entry. The shot caused an explosion which severely burned him, shocked miners further away, and burned a "brattice cloth" two hundred feet from the shot. The evidence of defendant tended to prove: (1) That there was no gas in the room 5, and the explosion was from this shot being defectively placed, called a "windy shot;" in other words, the explosion was purely of the powder, which was not properly confined and spread into the mine. (2) That the shot placed by Jones was negligently placed, and, if it had been properly placed, would not have caused an explosion, even if there was gas in room 5. This involved two propositions, (*a*) the placing of the shot into the solid coal beyond the cutting, and (*b*) placing it in a few inches from the wall of room 5, not having it far enough back to have proper resistance in front of it, causing it to blow the charge of powder and explode it into room 5. The issue first raised by this evidence, that it was a powder explosion and not a gas one, is out of the case on appeal, for the court instructed the jury in the ninth instruc-

tion: "If the plaintiff was burnt by the powder from his shot, and not from gas, your verdict should be for the defendant." The evidence abundantly sustains the verdict that it was from gas, and not from the powder. Therefore the issue narrows to whether Jones was negligent, either in the manner of placing the shot in the solid, or in placing it too near the rib of the next room. In view of the finding of the jury, and the evidence, it must be taken that this shot would have been harmless, had not gas accumulated in room 5. In other words, the negligence of the company is established under proper instructions on this issue. For injuries from the accumulation of gas due to lack of ventilation, the company is clearly liable; but, if Jones was negligent in fulfilling his duties in making the breakthrough, which negligence contributed to the explosion, the company is not liable. The witnesses differed as to the shot fired by Jones, some justifying it as proper and a skillful mining, and others as negligence. This is the issue of fact which should have been sharply drawn in an instruction, and sent to the jury for its determination. Instead of that, abstract and involved statements of the law of master and servant are given that could not be prejudicial to either side or helpful to the jury. At the conclusion of one of these instructions is this: "Then the court tells you that your verdict should be for the plaintiff, if you believe from the evidence, at the time of the injuries the plaintiff was using ordinary care for his own protection." The seventh instruction was as follows: "If you believe from the evidence that the plaintiff failed to use ordinary care for his own protection, as defined·in these instructions, you should find for the defendant." The definition referred to is conspicuous by its absence. Then the court correctly defined the burden of proof as to contributory negligence. Notwithstanding this insufficient submission of the real issues to the jury, the appellant cannot complain of it. In the first place, it never asked that the definition of ordinary care required of plaintiff, referred to in the seventh instruction, should be given; and, in the next place, it did not ask any instruction at all on the point which it is now contended the court·should have fully submitted to the jury. The appellant asked eleven instructions, all of which the court properly refused to give. The first was a peremptory instruction,

which should not have been given. The second, third, fourth, fifth, eighth, tenth and eleventh requested instructions assume that it was *per se* negligence to prepare and fire the shot as Jones did, while that is a disputed question of fact. This question was submitted in general terms to the jury, and the appellant did not ask it to be better submitted, and cannot now complain that it was not.

There was no error in refusing any of the other instructions. The third was to the effect that the company owed no duty to Jones to keep the room adjoining his free of gas, and that it fulfilled its duty to him if it kept his own room and place of work free from gas. This is not the law. The fire boss and the custom of the mine required Jones to open an aircourse into room 5, and he was as much interested in the ventilation of that room as his own.

The statute defines the amount and measure of the ventilation, and requires that so much air "shall be circulated to the face of every working place throughout the mine, so that said mines shall be free from standing gas of whatever kind." Kirby's Dig. § 5340. This means that the air shall be carried to the extremest point where the pick falls, and that the entire mine shall be free of gas. It is not susceptible of the narrow construction sought to be placed on it. There was no error in refusing the sixth instruction, as the ninth given by the court was to exactly the same effect. The seventh was a hypothetical statement of the defendant's theory of the case, and was equivalent to a peremptory instruction. The ninth was harmless to either side, but was properly refused, as this court has frequently said that isolated facts should not be singled out in instructions.

Finding no error of which the appellant can complain, the judgment is affirmed.

MR. JUSTICE BATTLE dissents.