CENTRAL COAL & COKE COMPANY *v.* BARNES.

Opinion delivered July 11, 1921.

1. MINES AND MINERALS—VENTILATION FROM GAS.—Under Crawford and Moses' Dig., § 7284, providing that there shall not be less than 200 cubic feet of air pass each working place per minute, non-compliance with the statute will not be excused upon the ground that it was not practical to comply with the statute.

2. MINES AND MINERALS—VENTILATION FROM GAS.—Where a shot-firer worked in a cross-cut in a mine, it was necessary for the mine operator to keep a current of air in circulation in such cross-cut, as required by Crawford and Moses' Dig., § 7284.

3. MASTER AND SERVANT—DUTY OF FIRE-BOSS TO MARK DANGEROUS PLACES.—Where there was a conflict in the evidence as to whether the fire-boss placed on the blackboard a warning of danger of gas in a

cross-cut, the court properly held that the question of negligence in failing to post the warning was for the jury.

4. MASTER AND SERVANT—ASSUMED RISK—QUESTION FOR JURY.—In the case of a shot-firer injured in firing a shot in a mine at a place where he had shortly before discovered gas and had fanned it away, it was not error to submit to the jury the question of assumption of risk where the place was not marked on the blackboard as dangerous, as required by Crawford and Moses' Dig., § 7279, and it did not appear that the danger of firing a shot was patent and obvious, and where the jury might find that he relied upon the master complying with the statute in regard to the circulation of air.

5. MASTER AND SERVANT—SAFE PLACE TO WORK—INSTRUCTION.—In an action by a shot-firer for injuries received in a mine, it was not error to instruct the jury as to the duty of the fire-boss to make the inspection required by § 7279, Crawford and Moses' Dig., and to notify the plaintiff by marking on the blackboard any danger in the mine where he 'was required to work.

6. MASTER AND SERVANT—SAFE PLACE TO WORK—AIR CURRENTS IN MINE.—It was not error, in an action by a shot-firer for injuries received in a gas explosion in a mine, to instruct the jury as to the master's duty in regard to furnishing air currents, as required by Crawford and Moses' Dig., § 7259, where the evidence tended to prove that the mine employed more than 10 men, and therefore came within the provisions of the act, as the jury might have found that if the air current had been provided plaintiff would not have been injured by the explosion of gas.

7. MASTER AND SERVANT—ASSUMED RISK—INSTRUCTION.—It was not error to instruct the jury that "while the plaintiff, by entering the services of the defendant as shot-firer in its mine, assumed all the risks ordinarily incident to that employment, he did not assume any risks arising from the negligence of the defendant or any one to whom it intrusted its superintending authority, unless it be further shown that the plaintiff was aware of such dangers and appreciated same."

8. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—INSTRUCTION.— An instruction to the effect that an employee's contributory negligence would not bar a recovery by him, but that the damages should be diminished by the jury in proportion to the negligence attributable to him, is in accord with the provisions of Crawford and Moses' Dig., § 7145, and is not erroneous.

9. DAMAGES—INSTRUCTION—REFERENCE TO AMOUNT SUED FOR.—While it is improper for the court, in instructing the jury in a personal injury suit, to make reference to the amount sued for, it was not prejudicial error to instruct the jury that if they found for the plain-

tiff they should assess his recovery at such sum as from the evidence, in their judgment, would fairly compensate him for the injuries which he had sustained, if any, not to exceed the sum claimed in the complaint.

Appeal from Polk Circuit Court; *James S. Steel,* Judge; affirmed.

*James B. McDonough,* for appellant.

(1)   A directed verdict should have been given in favor of the defendant.  A shot-firer is the absolute judge of the safety of every place that he goes into.  He relies upon his own judgment.  Plaintiff knew there was gas there.  Where a servant is required to make his place of work safe and fails to do so, he assumes the risk of his failure. 93 Ark. 140; 44 Ark. 524; 88 Ark. 292; 122 Ark. 552; 108 Ark. 377.  Where a servant has knowledge of the danger, no duty exists to give further information. 96 Ark. 500; 137 Ark. 615; 97 Ark. 486; 174 S. W. 150; 107 Ark. 341.  The risk of being injured by gas was incident to plaintiff's employment.  41 Ark. 382; 88 Ark. 548; 135 Ark. 330.  It was his duty to make his place of work safe.  100 Ark. 156.  The presence of gas is an obvious danger.  98 Ark. 211.  Plaintiff knew of the presence of gas and necessarily assumed the risk.  118 Ark. 304; 96 Ark. 387.

(2)   The court erred in giving plaintiff's instruction No. 1.  There was evidence of negligence in failing to make inspections.  Plaintiff did not go into a place of danger relying upon inspection by the fire boss.  He relied upon his own inspection.  He had better knowledge of the presence of gas than any other employee.

(3)   The court erred in giving an instruction (No. 2) on air currents.  Plaintiff knew he was the judge of the danger.  The fact that 200 cubic feet of air did not pass the face of the cross-cut per minute was not the proximate cause of the injury.

(4)   The court erred in giving plaintiff's instruction No. 4. 135 Ark. 330.  Plaintiff was aware of the danger.

(5) The court erred in giving plaintiff's instruction No. 5. This instruction does not correctly declare the law of comparative negligence.

(6) The court erred in giving plaintiff's instruction No. 6. 128 Ark. 479; 82 Ark. 61.

*A. M. Dobbs, Norwood & Alley* and *G. L. Grant*, for appellee.

(1) It was not error to refuse to direct a verdict for appellant.

(2) Upon the question of assumed risk, plaintiff was not, as a matter of law, precluded from recovery. 46 Ark. 396; 93 Ark. 140; 44 Ark. 529.

(3) It was not error to give plaintiff's instruction No. 1. 122 Ark. 401. No specific objection was made to objectionable allegations. 115 Ark. 120; 127 Ark. 183.

(4) The court properly gave plaintiff's instruction No. 2. 131 Ark. 562; 75 Ark. 86; Crawford & Moses' Dig. §§ 7145-6.

(5) It was not error to give plaintiff's instruction No. 4. 135 Ark. 330 is not a similar case.

(6) Instruction No. 5 is not erroneous. 124 Ark. 437.

(7) There was no error in giving plaintiff's request No. 6.

HART, J. The Central Coal & Coke Company prosecutes this appeal to reverse a judgment for damages for personal injuries in favor of Tom Barnes, who was injured by the explosion of gas while he was acting in the capacity of shot-firer in one of the company's coal mines.

Tom Barnes was a witness for himself. According to his testimony, he was thirty-seven years of age and had worked seventeen years at mining in the neighborhood of the mine where he was injured. He had had eleven years experience as a shot-firer and had been working in the mine where he was injured seventeen months as a shot-firer. He knew that gas feeders were in the mine. Gas

feeders are crevices in the coal where the gas escapes. The gas also sometimes comes out of the roof, or the bottom of the mine. You can only tell by testing it out with a safety lamp. An open lamp will explode the gas. The shot-firer goes into the mine after the miners have left it and fires the shots which the miners have fixed during the day. A shot-firer usually goes to work about 4:30 o'clock in the afternoon. On the day in question Barnes went to the blackboard on the surface and looked for warnings. Barnes found no warnings on the blackboard for the place where he was injured. When he entered the mine, he went to the fourth south entry and found three shots prepared for firing. He tamped the shots and then went back to the air course. He opened the cross cut and found gas in it. He brushed the gas out of the cross cut and then tamped a shot in it. By brushing gas out is meant that he took a rag curtain left there for that purpose and fanned the gas out of the cross cut. He then went back to the other side and fired a shot. Then he came back to the cross cut and fired the shot in it with his open lamp. The use of the open lamp caused the gas to explode and to severely injure him. He knew that gas was feeding in there, but he did not know that it was coming in so rapidly. Barnes made the first test for gas in the cross cut and also made a test for gas in the entry. There were shots to be fired on the air course side of the cross cut and also on the entry side of the cross cut. Barnes fired the shots on the entry side before the explosion. The safety lamp will indicate whether there is a great or small quantity of gas. When Barnes first went in there, he heard the gas bubbling in the water and made a test for it with his safety lamp. He knew that a good deal of gas had accumulated there, but he readily brushed it out and did not know that it was coming in so rapidly as to explode if he should return in so short a time and fire the shot with his lighted lamp. It was necessary to fire the shot with his lighted lamp, and Barnes was doing his work as shot-firer in the usual and customary

manner. It was his duty to make a test for gas before he fired the shot. The miner who prepared the shot in the cross cut where Barnes was burned worked in the cross cut all day, but used a safety lamp. The fire boss had told him that gas was there and to use a safety lamp. In the morning a dead line had been located between the first and second crosscuts, but it was moved later in the day.

Tom Shaw, State Mining Inspector, was a witness for the plaintiff. According to his testimony, he was familiar with the mine in question for the reason that he had inspected it. He explained how the air was made to circulate in the mine and said that, while gas can not be prevented from coming out of the feeders, the circulation of the air will carry the gas away. He explained how the air circulated through the fourth south entry and stated that, under the law, 200 cubic feet of air per minute is required to be circulated in all working places in the mine. He stated further that, if that much air had been kept circulating in the second cross-cut per minute, it would have kept the cross-cut free from gas. The reason is that the gas is so much lighter than air that the current of air sweeps it out of the mine.

R. E. Hinson, the gas man and fire boss, was a witness for the defendant. He went into the mine on the morning in question and examined the fourth south air course. The face of it was practically clear, but the cross cut had a feeder in it that morning which was making quite a lot of gas. Witness marked it out and put a dead line there. He then went to the top of the mine and put a notice on the blackboard. The marking on the board showed that the fourth south air course was cut off. The notice was put there for everybody to see. There was no duty on his part to notify Barnes personally. It was Barnes' duty to examine all places for gas where he was required to go before doing anything in those places. According to the testimony of the mine foreman, it was Barnes' duty, even after he had swept the gas out, to

examine it again with a safety lamp. According to the evidence adduced for the defendant, it was also shown that it was not practical to provide 200 cubic feet of air each minute in the cross cuts.

It is earnestly insisted that, under this evidence, the court should have directed a verdict for the defendant.

We are of the opinion that the court properly submitted the issue of negligence on the part of the defendant, and assumption of risk on the part of the plaintiff, to the jury.

Section 7279 of Crawford & Moses' Digest provides that in all mines where a fire boss is employed all working places shall be examined at least once a day by the fire boss, and that all dangerous places shall be marked on the blackboard before any other employees enter the mine.

Section 7284 provides that there shall not be less than 200 cubic feet of air pass each working place per minute, and that it shall be the duty of the State Mine Inspector to measure the air at all working places in making his inspection.

The testimony on the part of the defendant itself tended to show that the latter section of the statute had not been complied with. Counsel seek to justify the neglect on the ground that it was not practical to comply with the statute. This is a matter that addresses itself to the Legislature and does not furnish a defense to an action for negligence based on a noncompliance with the statute. Then, too, it is insisted by counsel for the defendant that it was not necessary to comply with the statute in the cross cut where the plaintiff was injured. This question has been decided adversely to his contention in *Western Coal & Mining Co.* v. *Jones*, 75 Ark. 76. It was there contended by the plaintiff that the company owed no duty to its servants to keep the room adjoining his working room free of gas. The court said that the statute meant that the air shall be carried to the

extremest point where the pick falls, and that the entire mine shall be free of gas. In the discharge of their duties the employee who mined the coal and the shot-firer both worked in the cross cut where the injury occurred. Therefore, it was necessary for the company to keep the current of air in circulation in the cross cut as required by the statute.

It was also the duty of the fire boss to have placed a warning of danger of gas in the cross cut on the blackboard. This he claimed he did. His testimony, however, is contradicted in this respect by that of the plaintiff, who testified that he examined the blackboard and found no marking there indicating danger in the cross cut. This made a question of fact for the jury, and the court properly held that the question of negligence was one of fact for the jury and not of law for the court.

Again it is insisted by counsel for the defendant that the court should have declared as a matter of law that the plaintiff assumed the risk and therefore should have instructed the jury to find for the defendant. Counsel points out the fact that it was the duty of the plaintiff to make a test for gas, that plaintiff discovered that gas was coming into the cross cut, and that he assumed the risk of firing the shot when he knew that the gas was escaping in such large quantities.

While it was the duty of the plaintiff to inspect for gas, he was not made the insurer of his own safety. Of course, if the gas was coming into the cross cut in such large quatities and so rapidly as to have been obvious to the plaintiff that it was dangerous to fire the shot, he would have assumed the risk of doing so. But we do not think that the undisputed evidence made the danger of firing the shot a patent and obvious one. The warnings, required by the statute, of dangerous places in the mine were placed there for the benefit of the plaintiff as well as the miners who worked the mine. The plaintiff says

that no marking with regard to the cross cut was placed on the blackboard.

The jury might have found that he relied on this fact in estimating the amount of gas that would come in the cross cut in a given time. Then, too, he readily brushed the gas out of the cross cut with the cloth left there for that purpose. The jury had a right also to assume that he might rely to some extent on the company complying with the statute in regard to the circulation of the air. The plaintiff was only gone a short time, and, when all these matters are considered, we are of the opinion that the court was right in submitting to the jury the question of assumption of risk.

Section 7145 of Crawford & Moses' Digest provides that contributory negligence shall not bar a recovery, but that the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. The court gave an instruction to the jury in compliance with this section of the statute. Therefore there was no error in refusing to direct a verdict for the defendant.

It is next insisted that the court erred in giving instruction No. 1 for the plaintiff. The instruction is as follows: "You are instructed that it was the duty of the defendant to exercise ordinary care to furnish the plaintiff with a reasonably safe place in which to work, and not expose him to any unusual danger while in the discharge of his duty as an employee in the defendant's mine; and it was also the duty of the defendant in the exercise of ordinary care to make such reasonable inspections and examination in its said mine as would enable it in the exercise of ordinary care to know of any dangers or dangerous places in its mine that might imperil the safety of the plaintiff while in the discharge of his duty as a shot-firer, and to notify the plaintiff by marking on the blackboard of any danger or dangerous places existing in said mine where the plaintiff was required to work, if there were any such dangers or dan-

gerous places and the defendant knew of them or in the exercise of ordinary care might have known thereof.

"If you find by a preponderance of the evidence that the defendant negligently failed to perform all or either of said duties and that the plaintiff was injured by reason of such failure and negligence, that the plaintiff is entitled to recover, unless he is precluded from recovering under the other instructions given you in this case."

Counsel for the defendant claims that the instruction is too general and misleading because it does not specifically define the issues in the case. He also contends that the instruction is erroneous in that it points out to the jury the duty of the defendant to make an inspection, whereas the duty rested upon the plaintiff alone to make the inspection for gas at the place where he was injured. Counsel contend that the fact that the fire boss had made an inspection did not justify the plaintiff in firing the shot where he knew that there was gas. That is true, but the quantity of gas and the rapidity with which it was feeding in the cross cut were questions to be decided by the plaintiff in determining whether it was safe to fire the shot. As above stated, in arriving at the conclusion, he had a right to rely in part upon the fact that the fire boss had not marked any danger there and also upon the fact that the statute prescribed the amount of air to be circulated there. These were statutory requirements enacted for the purpose of providing him with a safe place in which to work, and the court did not err in defining the duty of the fire boss to make the examination and inspection required by the statute and of notifying the plaintiff by marking on the blackboard any danger in the mine where he was required to work. We are of the opinion that the court did not err in giving the instruction.

It is next insisted that the court erred in giving an instruction on air currents in compliance with the provisions of section 7284 of Crawford & Moses' Digest.

It is contended by counsel for the defendant that this section does not apply to coal mines where less than ten men are employed underground in twenty-four hours, and that there is no proof in the present case that the mine in question came within the provisions of the act. It is true that there is no specific evidence to this effect. But the evidence shows that there were at least four south air courses, and that the mine employed a general foreman, a fire boss, and a shotfirer. The whole tenor of the evidence shows that it was a large mine. The State Mine Inspector, without objection, testified that he had inspected the mine as by law he was required to do. The statute only requires him to inspect mines where more than ten men are employed. Crawford & Moses' Digest, § 7259.

It is claimed that the court erred in giving an instruction based upon the section of the statute above referred to because the plaintiff knew that gas was in the cross cut and because the failure to cause 200 cubic feet of air per minute to pass the cross cut where the plaintiff was at work had nothing to do with his injury. The jury might have found that, had the current of air been in operation there, as required by the statute, it would have driven the gas out of the cross cut and not allowed it to accumulate there in sufficient quantities to ignite and thereby injure the plaintiff. It will be remembered that the evidence shows that he had returned in a very short time after brushing the gas out when he first found it there.

It is next insisted that the court erred in giving instruction No. 4, which reads as follows: "You are instructed that while the plaintiff, by entering the services of the defendant as a shot-firer in its mine, assumed all the risks ordinarily incident to that employment, he did not assume any risks arising from the negligence of the defendant, or any one to whom it intrusted its superintending authority, unless it be further shown that the

plaintiff was aware of such dangers and appreciated the same."

It is contended that the instruction is erroneous upon the authority of *Athletic Mining & Smelting Co.* v. *Sharp,* 135 Ark. 330. In that case an instruction on assumed risk was held to be wrong because the court neglected to tell the jury that an assumption of risk includes the negligence of the defendant if the plaintiff knew of the negligence and appreciated the danger incident to the service. That defect is not in the instruction in question. The instruction in plain terms tells the jury that the plaintiff did not assume any risk arising from the negligence of the defendant unless it was shown that he was aware of the danger and appreciated the same. The instruction as given was correct. *Ark. Land & Lbr. Co.* v. *Fitzhugh,* 143 Ark. 122.

It is next insisted that the court erred in giving instruction No. 5. It is as follows: "Upon the question of contributory negligence, you are instructed that the burden is on the defendant to establish that the plaintiff was guilty of contributory negligence, and that the defendant must make proof thereof by a preponderance of the evidence, unless such proof appears from the evidence on the part of the plaintiff; but if you find that the plaintiff was guilty of contributory negligence, such contributory negligence will not bar a recovery, or preclude the plaintiff from recovering in this action, if he is otherwise entitled to recover, but the damages, if any, shall be diminished by the jury in proportion to the amount of negligence attributable to the plaintiff."

The instruction tells the jury to take into account the negligence of the plaintiff and reduce his recovery in the proportion in which his negligence contributed to his injury. The instruction is in accord with the provision of section 7145 of Crawford & Moses' Digest and is not erroneous. The section, in substance, provides that the fact that the amployee may have been guilty of

contributory negligence shall not bar a recovery; but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. See, also, *Kansas City So. Ry. Co.* v. *Sparks,* 144 Ark. 227.

Finally it is insisted that the court erred in giving instruction No. 6, which is as follows: "If you find for the plaintiff, you will assess his recovery at such a sum as from the evidence, in your judgment, will fairly compensate him for the injuries which he has sustained, if any, not to exceed the sum of three thousand dollars. In arriving at the amount of plaintiff's recovery, if you find for him, you may take into consideration the plaintiff's pain and suffering, mental and physical, if any; his loss of time, if any; his diminished capacity to earn a livelihood, if any; the temporary or permanent character of his injury; the necessary expense incurred by him for medical and surgical attendance, if any; and upon consideration of all these elements of recovery, if proved, you will assess the damages in favor of the plaintiff. If you find for the defendant, you will simply so state in your verdict."

Counsel relies upon the case of *St. L. S. W. Ry. Co.* v. *Aydelott,* 128 Ark. 479. In that case the instruction did not restrict the jury to a consideration of the amount of damages as shown by the evidence and for that reason the instruction was held to be erroneous.

In the case at bar the rule announced in *St. L., I. M. & S. Ry. Co.* v. *Snell,* 82 Ark. 61, governs. There we held that it was improper for the trial court to make reference in an instruction to the amount sued for. The reason given was that the jury is presumed to know from having heard the complaint read that its verdict should not exceed the amount asked for. The court said, however, that where an instruction containing such reference is properly limited by a direction to find only such amount as the evidence warrants, the court will not hold it to be

prejudicial error. The rule there announced governs the present case.

We find no reversible error in the record, and the judgment will be affirmed.