WISCONSIN & ARKANSAS LUMBER COMPANY *v.* GARRETT.

Opinion delivered January 17, 1921.

1. MASTER AND SERVANT—NEGLIGENCE—JURY QUESTION.—In an ac-
   tion for injuries to an employee in lowering a jack under a car,
   whether the jack was defective and whether defendant had knowl-
   edge of that fact *held* questions for the jury.

2. MASTER AND SERVANT—ASSUMED RISK—JURY QUESTION.—In such
   case, whether the defect in the jack was so open and obvious
   that the employee assumed the risk therefrom, *held* a question
   for the jury.

3. MASTER AND SERVANT—DUTY TO INSPECT TOOLS.—An employee in
   a car repair shop who is ordered to lower a jack under a car is
   not required to inspect the jack for defects, but has the right to
   assume that the implement is in good condition.

4. DAMAGES—WHEN NOT EXCESSIVE.—Where plaintiff suffered a com-
   plete fracture of the jaw which permanently interfered with the
   mastication of food, a verdict of $6,000 was not excessive.

Appeal from Hempstead Circuit Court; *George R.
Haynie*, Judge; affirmed.

*T. D. Wynne*, for appellant.

1. It was error to refuse to direct a verdict for de-
fendant as requested. There was a total failure of evi-

dence to show that the jack with which plaintiff was injured was defective or that defendant knew of the defect. The verdict is based upon speculation, inference and surmise and can not be sustained. 26 So. Rep. 86; 51 La. Ann. 1247; 88 Fed. 462. See, also, 59 Ark. 106; 58 *Id.* 454; 106 S. W. 817; 212 *Id.* 463.

2. Plaintiff assumed the risk. 57 Ark. 160; 54 *Id.* 389; 56 *Id.* 232; 43 *Id.* 333; 88 *Id.* 548; 96 *Id.* 387.

3. It was error to give plaintiff's instruction No. 5. It is abstract. 88 Ark. 548, 243; 101 *Id.* 197; 104 *Id.* 489; 98 *Id.* 202; Labatt on M. & S. (2 ed.), vol. 3, par. 1174, 1179, 1183.

4. The verdict is excessive and at least a remittitur should be entered.

*D. D. Glover* and *Luke Monroe,* for appellee.

1. The verdict is sustained by the evidence. The evidence does show that the jack was defective and that defendant knew it or might have known it if due care had been used. 4 Labatt on M. & S., pp. 4185, 4819. The cases cited by appellant, 26 So. 86, and 212 S. W. 463, are not in point.

2. The risk was not assumed. 92 Ark. 355; 4 Thompson on Neg., § 3803; 1 Labatt on M. & S., §§ 155-7; 101 Ark. 201; 123 *Id.* 119; 107 *Id.* 512; 122 *Id.* 227.

3. The verdict is not excessive. Plaintiff was a young man with an expectancy of thirty-six years of life. The questions of fact were submitted to a jury, and there were no errors of law, and under the law and evidence the verdict is conclusive.

SMITH, J. Appellee, who was the plaintiff below, recovered judgment for $6,000, to compensate an injury which, according to his testimony, was sustained in the following manner. He was injured on November 10, 1919, while working in appellant's car repair shop, where he had worked only five days before his injury. A car, weighing about eight or nine thousand pounds, was jacked up with jacks—two on each side. Plaintiff did not assist in jacking the car up, but was directed by his

foreman to let the jack down.  The jack was hard to start, but plaintiff was assured that there was nothing wrong with the jack, that it just needed working, and for him to go ahead and let it down.  In lowering the jack he used a canthook handle as a lever, which was about five or six feet long.  He had lowered the jack a notch or two in the usual and ordinary way, when the handle flew up unexpectedly and struck him on the jaw, knocking him down and rendering him unconscious for a few moments.  After regaining consciousness he looked at the jack closely and saw that it was in a defective condition.  His jaw was broken, and pus formed in it, which ran for about three months, during which time pieces of bone sloughed off, and his jaw was kept bandaged, and he saw a doctor nearly every day.  His jaw became ankylosed, and an operation was performed which left a hole in his jaw, since which time he has been unable to chew his food, and has been unable to talk except through his teeth, and his jaw feels dead and stiff and pains him at times, so that he can not take bites of food as an ordinary man does, and he sustained a loss of twenty pounds in weight.  There were four jacks in the shop, all of the same size and make, and one could not be told from another by casual observation.

John Bailey, who had been foreman in the repair shops until about two months before plaintiff's injury, testified that an engine fell on one of the jacks and bent the step or stempiece which comes up out of the jack, which is housed in and which has notches on it, and this occurrence tore the step loose and damaged the screw so that it would not hold after that.  Witness regarded the jack as unfit for use, put it in the scrap heap, and asked for a new one in its stead.  The master mechanic took the jack to the shop and attempted to repair it, and put it back in use.  The jack was repaired more than once, but on account of the stem being bent the dog, which catches in the notches, worked to the side, instead of the center of the stem, and would cause it to slip out of the notches and fall.

There was testimony that the jack fell once while the general foreman was present, the lever going near his head, and that the master mechanic, whose duty it was to keep the tools safe, knew of its defects, and put it back into use over the foreman's objection.

The witness, Bailey, who testified about the defective condition of the jack, did not know that plaintiff was injured while employed with that jack or that the jack was in use when plaintiff was injured, and objections were made to the admission of the testimony on that account. But there were only four jacks in use, and the testimony was to the effect that only one of them was defective, and plaintiff testified that he observed some of the defects in the jack with which he was at work which the witness Bailey described. The testimony of Bailey was competent, as it, taken in connection with that of plaintiff, warranted the inference that plaintiff was hurt while using the defective jack which Bailey had described.

Upon the part of defendant the testimony was to the effect that the jacks were all exactly alike, and none of them was defective. That in raising or lowering the jack the operator should hold the handle firmly, and that if this had been done by plaintiff no injury would have occurred, and that plaintiff's injury was due to this failure on his part, and not to the defective condition of the jack. That as soon as plaintiff was injured another employee was directed to lower the jack, and that he did so in the usual and ordinary way without difficulty or injury, and that the jack was continued in use without repair of any kind from the date of plaintiff's injury to the date of trial, during all of which time no defect in it had been observed, and that none existed. One of the jacks was exhibited to the jury, and, while the witnesses did not testify that it was the jack at which plaintiff was employed, they did testify that it was exactly like the other three jacks, and had been picked up from among the others, and that there was nothing to distinguish any one from the others. Plaintiff testified, how-

ever, that the jack exhibited was not the one with which he was hurt.

The court gave all the instructions requested by defendant except one numbered 9. But this instruction appears to have been fully covered by others which were given.

It is insisted that there is a total failure of evidence to show that the jack with which plaintiff was injured was defective, or that defendant had knowledge of that fact. But we think the testimony set out above was sufficient to carry that question of fact to the jury.

It is also insisted that plaintiff assumed the risk; this insistence being based upon the theory that, if there was a defect such as plaintiff and Bailey testified existed, the defect was so open and obvious that it would have been discovered by any ordinary use of the jack. But this question was submitted to the jury, and we think properly so. Plaintiff had the right to assume that the jack was in good condition, and he was not required to inspect it for defects, and he testified that he did not observe the existing defect until after his injury. It is true that he did admit that after his injury he observed the defect; but the discovery then made was the result of curiosity, and not a belated discharge of a duty to inspect or to observe obvious defects.

It is finally insisted that the verdict was excessive. Upon this proposition, in addition to the testimony set out above, plaintiff's physician testified that there was a complete fracture of the jaw; that the jaw was stiff and the injury was permanent; that, while there was an operation which might be beneficial, he did not advise the operation in plaintiff's case, as he thought there was no promise of good results. The surgeon representing the defendant testified that it was impossible to open plaintiff's mouth to get an x-ray picture of it, and that the injury was a permanent one, which would always interfere with the mastication of food, essential to good digestion.

Under these circumstances we can not say the testimony was not sufficient to support the verdict.

No error appearing the judgment is affirmed.