MID CONTINENT QUICKSILVER COMPANY *v.* ASHBROOK.

4-4775

Opinion delivered October 25, 1937.

*J. H. Lookadoo,* for appellant.

*Tom Kidd,* for appellee.

BAKER, J. The appellant is a corporation that owns and operated cinnabar mines in Pike county. The ore is found by cutting tunnels into the mountain side until the vein of ore is struck and that is followed and the cinnabar removed. A tunnel about 8 by 8 feet was cut into the side of the mountain about 150 feet back or away from the entrance. Timber supports and braces were put up to within about 20 feet of where a shot of dynamite was exploded in the side or top, or at a point where cinnabar had been found.

Leo Yount was the agent or general manager of the company. Marvin Cummins was the general foreman. L. R. Ashbrook was a foreman in charge of a small squad. These mines are operated by working small squads of men consisting of only three or four in one particular place. They remove or get out the ore from which the quicksilver or mercury is obtained.

The appellee, with whatever help was necessary, placed dynamite and caused an explosion, according to his contention, which may be said to have been found by the jury to be in conformity with his theories, then he entered the tunnel and went to the point of the explosion as soon as it was reasonably possible to get rid of smoke. An examination was made and it was found that there

was a large rock, weighing perhaps twelve tons slightly loosened, or, if not shaken, perhaps, made somewhat insecure by the explosion. We understand that this rock was overhead, it might have been in a side wall of a tunnel. There is no real difference.

Ashbrook, although a foreman himself, says that immediately after the explosion he inquired of Yount, who had much more experience than he had, and who was the general manager, about whether it would be safe to work under or by the large rock. Yount, according to his contention, gave assurance that the rock would not fall and directed him to proceed with his men with the work. This work was to remove loose particles of stone, shale, or other debris that had been broken up by the explosion, using a pick or crowbar on the walls, or overhead, as the case might be, and carrying out the debris or muck with buckets. While the men were at work the large stone, the one weighing about twelve tons, fell on it, or another falling at the same time, fell or rolled upon appellee's feet and legs, causing the injury for which he sued.

The alleged negligence was, according to the complaint and testimony of the appellee, in the failure to exercise ordinary care to furnish a safe place within which the appellee might do his work, and further in the alleged assurance by Yount that the rock would not fall, which assurance was relied upon; and, while working under such assurance, that the appellee suffered the injuries complained of.

The record as presented urged several grounds for the reversal of this case. The view we have taken of it renders it unnecessary to consider more than one of these and our conclusion in that regard disposes of all the other matters. In addition to the foregoing statement which we think is the most favorable that can be stated of the appellee and in thorough accord with his contention, he makes the following explanation of his conduct at the time of the falling of the stone causing the injury.

"At this particular time the hole was about 150 feet back in the mountain and we had deepened it back some 50 feet and started to make a tunnel out at the side. 'Q. The timbers had been built up to catch the rocks that

might fall from the top, up to the end of it, hadn't they? A. Yes.' I tended to the supervising of placing the shots under Mr. Leo Yount. He told me where to put it; he isn't a driller; I am. He just showed us where to work. Mr. Yount went back in there after I had blown the smoke out where the shot was and we all looked at this big rock hanging from above. I asked Mr. Yount about this big rock and he said he thought it would be all right. I asked him if he thought it would be safe and he said he did. Q. If timbers had been placed under that big rock and another shot placed in there wouldn't it have blown those timbers out? A. Not if we had put in the right size. I knew the rock was in the condition that it was in, I saw it hanging there. Bud Pierce and I were picking the smaller particles from around the big rock. 'Q. You knew the rock was in the condition it was in? A. I just knew it was hanging there. Q. You and Bud Pierce were picking the smaller particles from around the big rock? A. That is right.' I did not know whether the big rock would come down or not, Mr. Yount said that it would be safe. George Richardson did not say anything about the rock being dangerous.''

This appellee has made an intelligent statement of the conditions under which he was working. It is susceptible of only one meaning, the one which we must presume he intended. Mr. Yount thought the rock was safe, but appellee knew its condition and proceeded to its removal. He, himself, was the one engaged in the picking out or taking out of the loose, shattered or broken rock around it. One of the other workmen was holding the light. He knew its exact condition and anticipating that it, or other rock, would fall and sever the electric cord which furnished the current for light with which they worked, he was expecting the rocks to fall. While he was stooping it did fall and caused his injury.

No doubt, he was a good ''boss'' or foreman; understanding that the rock was loose and was liable to fall, he took the place of danger and picked out the rock supporting or holding the one that was dangerous. He is the witness that testifies that it weighed twelve tons. It

would be foolish to argue that he did not know or appreciate the danger of this rock falling or rolling upon him.

But it is urged that Mr. Yount thought this rock was safe. We assume Mr. Yount was mistaken; that further investigation would have disclosed the convincing fact that the other workmen discovered when they went to work upon it and that prompted them to make the effort to remove it. It is true, he adds, as a part of his testimony, "I did not know whether the big rock would come down or not," but he and Bud Pierce were picking the smaller particles from around the big rock and "he knew the condition that it was in, that it was just hanging there." Mr. Ashbrook's information and his attitude toward this work is further expressed by the following questions and answers:

"Q. And then you say that Mr. Yount did not think it was dangerous; and, after Mr. Yount left, Bud Pierce suggested that he didn't want to work under it as it was and suggested that you pick it down and 'I agreed with him?' A. I did say that. Q. And you agreed with him? A. Yes." Plaintiff further testified that when Mr. Yount was not there he was the foreman; in fact, he was the foreman all of the time and the other boys took orders from him.

The foregoing statements are conclusive of another fact, that is that Ashbrook and Pierce did not rely upon the statements made by Mr. Yount in which he expressed a belief that the rock would not fall; but they deemed it unwise to work near it in the condition in which they found it, and relying upon their own judgment, began efforts for the removal of the rock. Mr. Yount was not present, ordering and directing that work to be done, but Mr. Ashbrook, as foreman, had control of the men assisting him in the removal of the large stone.

The record discloses that he was a man of mature years. He was more than ordinarily intelligent. At the time of his injury he was a foreman in charge of the work and knew that the safety of the men working under him depended upon the soundness of his opinion and judgment. He was working to make a safe place within which

the employees of the company might work. It is shown by his own testimony that the walls and top of the tunnel could not be shored up with timber until the loose rock or shale had been picked or cut out and removed. It is apparent that it would have been foolish to attempt to brace up a twelve-ton rock that was about ready to fall. He knew that, and attempted to remove it before bracing could be placed.

We appreciate the fact that he had only a few months experience and also the further fact that it is argued that Yount had had many years of experience, but there was no reliance on Yount's statement as to the safe condition of the large stone. Ashbrook and Pierce, in the exercise of their own judgment and discretion, were removing the stone, and their experience, the common or ordinary everyday experience of all men, was such that they must have known and fully appreciated the fact that when they took away the rock or particles holding or supporting the larger stone or rock, it would fall. They understood that; they knew more about this condition than Mr. Yount did; and, of course, they knew and appreciated the danger of the very accident that happened. They knew that rock was liable to fall which would or might sever the electric cord. *Union Saw Mill Co.* v. *Hayes,* 192 Ark. 17, 90 S. W. (2d) 209; *McEachin* v. *Yarborough,* 189 Ark. 434, 438, 74 S. W. (2d) 228.

The last cited case and authorities there presented control here, and are conclusive as to all matters in controversy.

The conversation with Yount did not bring this case within the exception to the general rule. Yount made no statement, gave no assurance, which, being relied upon, was the result of the injury.

The necessary conclusion must be that the court should have directed a verdict for the defendant as requested. On account of the failure to do so there was error for which we reverse the judgment of the trial court.

This case has been completely developed. The appellee's statement, made with the complete understanding

of the conditions that prevail, forecloses or shuts off any right to recover. There is no necessity for remanding the case.

The cause is, therefore, dismissed.