HAYNES DRILLING CORPORATION *v.* SMITH.

4-5986                                          143 S. W. 2d 27

Opinion delivered July 1, 1940.

*Atchley & Vance* and *Arnold & Arnold,* for appellant.

*Burford & Sanderson* and *Shaver, Shaver & Williams,* for appellee.

MEHAFFY, J.   On February 9, 1939, the appellee filed suit for personal injuries against the appellant, alleging that the appellant was a foreign corporation engaged in drilling oil and gas wells; that on September 12, 1937, appellee was employed as a driller's helper, working on a well which was being drilled near Buckner, Columbia county, Arkansas, under the supervision and direction of J. E. Senter, who was in charge of said work for appellant; that while so engaged he was using certain tongs fixed around the drill pipe immediately above the slips and below the tool joints, which tongs extended

about three and a half feet from the pipe; the drill pipe being lowered in the well was about 2,500 feet in length and weighed 40,000 pounds, and was being held by and lowered through pipe slips; that said pipe slips were old, worn and defective, so that they would not and did not hold the weight of said drill stem; that he did not know that the slips were worn and defective; that said Senter advised him that new slips were being sent to replace the old ones and assured him that the old slips were sufficient and safe; that appellee, relying upon the superior knowledge, skill and authority of Senter, proceeded in the performance of his duties; that after two or three joints of pipe had been lowered into the well, the slips suddenly and without warning gave way and failed to hold, allowing the drill stem to fall into the well with great weight and force, carrying the tongs attached and extended from the pipe, striking the appellee's foot with great force and violence, severely crushing and mangling his left foot and ankle to his permanent injury and damage; that said injuries and damage were caused by the carelessness and negligence of appellant in that appellant failed to furnish appellee a reasonably safe place in which to work and safe tools and appliances, and carelessly and negligently ordered appellee to proceed with the drilling operations when it knew, or could have known, that said slips and equipment were worn, old, defective and unsafe; that appellant was careless and negligent in requiring appellee to work in and about said drilling operations when it knew, or could have known, that said slips would not hold the weight placed thereon; that said acts of negligence were the proximate cause of appellee's injuries and damages; that appellee's foot was severely and horribly crushed, mangled and permanently injured, causing continuous pain and suffering; that said injuries are of a serious and permanent nature, causing appellee physical and mental pain and suffering, diminishing his earning capacity and capacity to work. Appellee alleged that at the time of his injuries he was a young man thirty-one years old with a life expectancy of thirty-five years;

that he was receiving $48 per week for his work. The prayer was for damages against appellant in the sum of $30,000.

Appellant filed answer denying all the material allegations in the complaint and alleged that the machinery was in good condition and that appellee knew that it was a common and ordinary occurrence for new pipe slips in good condition to allow a string of new drill pipe to settle into the hole; that notwithstanding such knowledge, he put himself in a position of danger; that his knowledge was equal to or greater than that of any of appellant's agents and that he voluntarily exposed himself to said danger and assumed the risk; that he was guilty of contributory negligence; that appellant is a Louisiana corporation and the bulk of its business is transacted in Louisiana, but that it had contracts to drill in Arkansas; that appellant subscribed to the Workmen's Compensation Law of Louisiana and had effected a contract of compensation insurance and that appellee was covered under said policy at the time of his injury; that the Workmen's Compensation Law is and was extra-territorial in effect and covered appellant's operations and A. M. Smith at the time of his injury in Arkansas; that the compensation statute made compensation to be paid thereunder the sole and exclusive remedy for all injuries suffered by all employees in the course of their employment while covered by workmen's compensation insurance; that appellee had received from appellant's compensation carrier weekly payments under the law for 62 weeks at $20 a week, a total of $1,240 plus medical expenses incurred, and that said payments were received voluntarily by appellee. Appellant further alleged that if it should be mistaken as to its affirmative defenses, it was entitled to credit for all sums paid under the compensation law; that said payments were voluntarily received with the full knowledge of appellee that the same were paid under and pursuant to the compensation law; that by electing to take payments under the compensation law, appellee waived his right to pursue an action at common law for damages.

There was a verdict and judgment in favor of the appellee for $13,760. The judgment was for $15,000, less the amount that had already been paid appellee, which was $1,240. Motion for new trial was filed and overruled, and the case is here on appeal.

The first contention of the appellant is that the court erred in refusing to direct a verdict in favor of appellant because, it says, the undisputed testimony shows that appellee assumed the risk of the danger. It calls attention to the case of *Mid-Continent Quicksilver Co.* v. *Ashbrook*, 194 Ark. 744, 109 S. W. 2d 448. The court in that case said, among other things after quoting the testimony for appellee: "Plaintiff further testified that when Mr. Yount was not there he was the foreman; in fact, he was the foreman all of the time and the other boys took orders from him.

"The foregoing statements are conclusive of another fact, that is that Ashbrook and Pierce did not rely upon the statements made by Mr. Yount in which he expressed a belief that the rock would not fall; but they deemed it unwise to work near it in the condition in which they found it, and relying upon their own judgment, began efforts for the removal of the rock. Mr. Yount was not present, ordering and directing the work to be done, but Mr. Ashbrook, as foreman, had control of the men assisting him in the removal of the large stone."

It, therefore, appears that the injured party in that case was himself the foreman, and also appears that he did not rely on any statement or promise of the foreman.

In the instant case the appellee testified that J. E. Senter was the driller on the day shift, and that Senter directed appellee and Burrows to clean up the slips. Senter told appellee: "Let's clean up the slips and run pipe in the hole until those other slips get here." The appellee also testified that, to do this work directed by the foreman, he was required to put his leg in a position so as to hold the tongs; that the slips gave way and

the string of drill stem pipe fell, and his toe was caught between the tong handle and the rotary floor; that Senter instructed the crew to clean up the slips. Appellee was hired by Senter and received the sum of $7 a day for his work.

Senter testified that he went down that morning and did some work and that he had been informed that new slips had been sent for and he did not begin the work until ten or ten-thirty because the slips were dull and witness thought he would wait a while and get some new ones. He testified that the slips had been ordered and were on the way; that he was in charge of the drilling operations and directed his men how to perform their work, and what work to do. Witness had been working as a driller since 1928; that it was his judgment that the slips were all right and would hold, and if he had not thought so he would not have used them.

The undisputed evidence, therefore, shows that Mr. Senter was the foreman, was in charge of the work, and that he directed the men, including appellee, how to perform their work and what work to do. It is true that when one enters the employ of another he assumes all the usual risks and hazards of the employment, but he does not assume any hazard that is the result of the master's negligence, or the result of the negligence of any other employee.

"Although the defense of assumption of risk is established as a part of the law and will be applied in all cases fairly within the rule, it is, nevertheless, not a favored doctrine, but at best is artificial and harsh and should not be extended beyond its reasonable limits." 39 C. J., 689; *Seaman-Dunning Corp.* v. *Haralson*, 182 Ark. 93, 29 S. W. 2d 1085.

The question of the assumption of risk is generally one of fact for the jury. "Ordinarily, the question of assumption of risk is one of fact for the jury, unless the facts are inconsistent and present a situation so plain that intelligent men would not draw different conclusions." 18 R. C. L. 676; *Wisconsin & Arkansas Lbr. Co.*

v. *Garrett,* 147 Ark. 75, 226 S. W. 1051; *Central Coal &
Coke Co.* v. *Barnes,* 149 Ark. 533, 233 S. W. 683; *Western
Coal & Mining Co.* v. *Burns,* 168 Ark. 976, 272 S. W. 357;
*Power Mfg. Co.* v. *Saunders,* 169 Ark. 748, 276 S. W. 599;
*McDonald* v. *Hellbron-Palmer Tank Line Co.,* 173 Ark.
77, 292 S. W. 115; *Ault* v. *McGaughey,* 173 Ark. 322, 292
S. W. 359; *Booth & Flynn* v. *Price,* 183 Ark. 975, 39 S.
W. 2d 717, 76 A. L. R. 957.

The appellant requested, and the court gave, an
instruction to the jury submitting this question. The
instruction reads: "An employee in the discharge of his
duties is deemed to have assumed all the risks and
hazards connected with his employment which are usually
and ordinarily incident to his duties, and the employee
also assumes all risks that might arise from any defect
in the tools or appliances if the employee knows and
understands the dangers thereof, or if the dangers there-
of, if any, are so open and obvious that the plaintiff
should have observed them."

In the instant case the injured servant was acting
under the orders and directions of his foreman.

"It is a fundamental of the relation of master and
servant that the servant shall yield obedience to the
master, and this obedience an employee may properly
accord even when confronted with perils that otherwise
should be avoided. In any case, but more plainly when
a command is sudden and there is little or no time for
reflection and deliberation, the employee may not set
up his judgment against that of his recognized superiors;
on the contrary, he may rely upon their advice, assur-
ances and commands, notwithstanding many misgivings
of his own. It by no means follows that because he
could justify disobedience of the order he is barred of
recovery for injuries received in obeying. He is not
required to balance the degree of danger and decide
whether it is safe for him to act, but he is relieved in a
measure of the usual obligation of exercising vigilance
to detect and avoid danger. Ordinarily, he may assume
that the employer has superior knowledge and rely
thereon, especially when the act is one that could be

made safe by the exercise of special care on the part of the employer. The employee may assume that such care will be taken. Again, it is a psychological truth that employees form a habit of obedience that overcomes independent thought and action, depriving them of power to exercise intelligence that otherwise would protect them." 18 R. C. L., p. 655, § 149, *et seq.; Owosso Mfg. Co.* v. *Drennan,* 182 Ark. 389, 31 S. W. 2d 762.

It is contended by the appellant that appellee's sole and exclusive remedy is under the Workmen's Compensation Act of the State of Louisiana, and argues that appellee is a citizen of Louisiana. The evidence conclusively shows that he is a resident of Arkansas, lived at Stamps, Arkansas, and the injury occurred in Columbia county, Arkansas, and suit was brought in the circuit court of Miller county, Arkansas. It is true the appellee had, at one time, lived in Louisiana, but his home at the time of the injury was in Arkansas, where the injury occurred.

"It is a general rule subject to but few exceptions that the *lex loci delicti* governs the right of an injured party to sue for a tort, the liability of the perpetrator, and the defenses he may plead." Minor on Conflict of Laws, § 196, p. 484.

Section 197 of Minor on Conflict of Laws, provides: "Not only does the *lex loco delicti* control the plaintiff's right to sue and the grounds of his complaint, but the same law usually governs the defenses which may be made by the defendant."

In the case of *Mosby* v. *Manhattan Oil Co., et al.,* 52 F. 2d 364, 77 A. L. R. 1099, the court quoted with approval § 194 of Minor on Conflict of Laws, as follows: "The law of the situs of a tort is of course the 'proper law' to govern the liabilities and rights arising therefrom. If not liable by the *lex loco delicti,* the general rule is that the defendant will not be liable elsewhere. If liable by that law, he will usually be held liable wherever the question arises to the same extent as if he were sued in the *locus delicti* itself."

This court, in discussing the Workmen's Compensation Law of Louisiana, said: "This contract deprives a citizen of this state of an appeal to its courts and remits him for the establishment of his rights and a remedy for his wrongs to a foreign jurisdiction, to be determined by procedure unknown here, and contrary to our traditional policy. Article 2, § 7, of our Constitution preserves in all cases triable in a court of law the right to a trial by jury, without regard to the amount in controversy. No declaration of a settled policy could be clearer than the language there used, and any shift to thwart or nullify the fundamental law cannot be upheld." *Standard Pipe Line Co.* v. *Burnett*, 188 Ark. 491, 66 S. W. 2d 637.

Even if the Workmen's Compensation act of Louisiana expressly provided that it should have extra-territorial effect, it could not have effect in Arkansas where it is in violation of the above section of our Constitution. This section was superseded by Amendment No. 16 which still preserves the right of trial by jury, and the amendment is not important in this connection.

Numerous authorities are cited by the parties, which we do not think it necessary to review.

Section 32 of art. 5 of our Constitution reads as follows: "No act of the General Assembly shall limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property; and in case of death from such injuries the right of action shall survive and the General Assembly shall prescribe for whose benefit such action be prosecuted."

It is next contended that Smith is not entitled to recover because he accepted the benefits of the Louisiana Compensation Act and is precluded thereby from bringing his suit at common law.

Frank Gibson, a witness for appellant and claim agent for the Employers' Casualty Company, on cross-examination testified that he went to see Mr. Smith in the hospital and paid him $20 a week while he was in the hospital; Smith did not agree to accept this in pay-

ment of his claim; he agreed to accept weekly compensation while he was recovering; he did not sign anything; he wanted to settle under the Arkansas law and witness wanted to settle under the Louisiana law; witness knew he was living in Arkansas; witness tried to get Smith to come to Louisiana and file suit. Witness further testified that the insurance company admitted it owed appellee something.

There is no evidence in the record that the appellee ever made an election to accept benefits under the Louisiana Compensation law.

Appellant next contends that the court erred in withdrawing from the jury, its contention that appellee had agreed to accept the benefits of the Louisiana law to the exclusion of any common-law action. The only evidence in the case is to the effect that he refused to do this. It was, therefore, not error in the court to withdraw the question when the evidence conclusively showed that he had not agreed to accept the benefits under the Louisiana Compensation Law.

It is next contended by appellant that appellee's instruction No. 4 was in conflict with appellant's instruction No. 2. Appellee's instruction No. 4 was a correct statement of the law, and there was no error in giving it. If there is any conflict, it was caused by appellant's getting the court to give an erroneous instruction.

There was no error in giving instruction No. 1 requested by appellee.

Mr. J. E. Senter testified that he had been informed that Wardlow, in charge of the night shift, had had trouble with the slips. There was no error in permitting this testimony. It shows that Senter, who was the foreman, had notice of some defect or some difficulty with the slips, and there is no evidence that appellee knew anything about this.

It is finally contended by the appellant that the verdict is excessive. The verdict was for $15,000 less

$1,240 that had already been paid by the insurance company.

A majority of this court is of the opinion that the verdict is excessive, and has concluded that $10,000 less the $1,240 already paid, is the largest amount that the evidence will sustain, leaving a balance of $8,760. Mr. Justice Humphreys and the writer do not agree with the majority in this holding.

If the appellee will, within fifteen days, enter a remittitur reducing the judgment as above stated, it will be affirmed. Otherwise it will be reversed and remanded for a new trial.