4-7596                                    186 S. W. 2d 946

Opinion delivered April 16, 1945.

*Joseph R. Brown,* for appellant.

*Abe Collins,* for appellee.

SMITH, J. Appellee, plaintiff below, sued the defendant railway company, under the Federal Employers' Liability Act, to recover compensation for personal injuries, which he sustained while employed as a brakeman on an interstate train operated by defendant, on July 13,

1943, when he alighted from said train, while it was nearing the town of Superior, Louisiana, to put out flagging equipment to protect his train, in obedience to an order of the conductor in charge of the train that he alighted from, at or near a road crossing about one-half a mile north of said town, for said purpose. He recovered a judgment for $3,000 from which is this appeal.

The allegations of negligence contained in the complaint are as follows:

"Said conductor was negligent in ordering and permitting plaintiff to alight from said train under said conditions and his said negligence and said negligence of the defendant in failing to warn and instruct plaintiff as to the danger in so doing, concurring and coacting together were the proximate cause of the injuries to plaintiff herein complained of."

Appellee had no experience in working as a brakeman prior to a little more than 60 days before his injury. The train on which he was employed as a brakeman had orders to do some switching at Superior, and plaintiff testified that he was ordered by the conductor to get off the train at the road crossing, about one-half mile north of Superior, and that in attempting to obey this order he fell and was injured. Execution of the order which plaintiff received from the conductor required him to collect and carry with him certain flags and fuses to protect his train from another. He went, with his equipment, to the caboose, at the rear end of the train, where another brakeman and the conductor were standing on the platform. Gravel had been spread along the railroad track an inch or two in depth, and while the train was running 12 or 15 miles per hour, appellee attempted to alight, and was injured.

No contention is made that appellee should have waited until the train stopped before alighting; on the contrary, his order required him to alight from the train before it stopped, and he did so in the immediate presence of the conductor who had given him his orders, and that he did this without warning or instruction, and the

insistence is that this failure was negligence. Appellee testified in alighting from the train in the presence of the conductor, who knew he was an inexperienced brakeman, that he relied upon the judgment of the conductor that he might do so safely.

On the other hand, the insistence is that there was no duty to warn or instruct as the danger of alighting from a moving train was obvious and known to appellee.

Inasmuch as this case was based on the act of Congress known as the Federal Employers' Liability Act, the question of liability for appellee's injury must be determined by the construction of this act given it by the Supreme Court of the United States. Among the latest of these cases are the following: *Bailey* v. *Central Vermont R. Co.*, 319 U. S. 350, 63 S. Ct. 1062, 87 L. Ed. 1444; *Tiller* v. *Atlantic Coast Line R. Co.*, 65 S. Ct. 421, 89 L. Ed. ............* (decided Jan. 15, 1945), and *Blair* v. *Baltimore & O. R. Co.*, 65 S. Ct. 545, 89 L. Ed. ............*

In the last of these cases, it was observed that the defense of assumption of risk had been abolished by an act of Congress (August 11, 1939) 53 Stat. 1404, c. 685, 45 U.S.C.A., § 51, 10A F.C.A., Title 45, § 51. *Tiller* v. *Atlantic Coast Line R. Co., supra.* Yet it was there said: "It is true that the petitioner undertook to do the work after he had complained to the company that the pipe should not be moved in the manner it was. But he was commanded to go ahead by his superior. Under these circumstances it cannot be held as a matter of law that he voluntarily assumed all the risks of injury." So here, appellee's injury resulted from an act performed at the direction and in the presence of his superior, who had the authority to give the order, and we cannot therefore say that the master was free from negligence.

The cases just cited hold that the defense of assumption of risk had been abolished, and that contributory negligence will not defeat a recovery of damages, but will diminish the damages in proportion to the amount of negligence attributed to the employee. But the act has not dispensed with the requirement that the negli-

---

* Page not available at time of going to press.

gence of the employer must be shown, and the insistence is that this showing was not made.

We are of the opinion, however, in view of the liberal construction given this act by the various Federal courts which have construed and applied it, that the testimony presents this question for the decision of the jury. According to appellee, he was attempting to obey the order of a superior, in the presence of that superior, by alighting from the train at about the place where he was told to alight, to plant his flags and place his fuses to protect the train, and that he would not have alighted from the train under such conditions, if he had known and appreciated the danger of doing so, in view of the speed at which the train was moving. Under these facts, we think the jury was not unwarranted in finding that the conductor, who was standing by, should have warned appellee of the danger. If it be said that notwithstanding that fact, appellee was guilty of contributory negligence, this would not defeat the recovery, but could be considered only in diminution of the damages to be recovered, and the jury was so advised in the instructions on the measure of damages.

It is strongly urged that instruction No. 1, given at the request of appellee, is in conflict with instruction No. 7, given at the request of appellant. These instructions read as follows:

## Instruction No. 1

"If you find from a greater weight of the evidence that plaintiff by reason of inexperience was unfamiliar with the danger from alighting from a train under the conditions existing at the time he alighted therefrom and defendant carelessly and negligently failed to warn him thereof; or that the conductor of said train was careless and negligent in ordering and permitting plaintiff to alight therefrom under said conditions; and that said negligent act or acts of the defendant, if any, were the proximate cause of plaintiff's injuries, if any, you will find for the plaintiff."

## Instruction No. 7

"If you find from the evidence that Conductor Hunter requested plaintiff to alight from the train as it crossed the road crossing about one-half mile north of Superior, Louisiana, and you further find that the train was running so fast that plaintiff could not alight therefrom with safety, and you further find that this fact was apparent to a man of ordinary intelligence, you should return a verdict for the defendant railway company if you find that plaintiff at the above referred to crossing attempted to alight from said train, and that his injury resulted from the fact the train was running too fast."

If there is any conflict in the instructions, the conflict arises out of the fact that the instruction given at the request of the appellant was more favorable to it than it should have been, in that it would have denied a recovery, even though the jury should find that the conductor was negligent in ordering and permitting appellee to alight from the train under the conditions existing at the time, and that such neglect contributed proximately to appellee's injury. It was held in the case of *Haynes Drilling Co.* v. *Smith*, 200 Ark. 1098, 143 S. W. 2d 27, that one who had induced the court to give an erroneous instruction could not be heard to complain that it conflicted with a correct instruction.

We conclude that a case was made for the jury, but we are also of the opinion that the judgment is clearly excessive, and is not sufficiently supported by the testimony.

Plaintiff's injuries consisted of a cut thumb, a lacerated lip, a bruise over his eye, and the loss of a tooth bridge, costing $40. All these injuries appeared to have healed when appellee returned, within a month and 8 days after his injury, and asked that he be permitted to return to his former employment, which request was denied because he refused to sign a release of his claim of damages for his injuries. Appellee testified that the cut was on his left thumb, and that he was left-handed, and his own testimony, and certain other testimony in

his behalf, was to the effect that his ability to grip with his left hand had been impaired, and his earning capacity had been thereby diminished. He also complained that he suffered from headaches, and that he had sustained an impairment of his vision.

Opposed to this testimony is that of the surgeon in charge of the Kansas City Southern Hospital Association, operated for the treatment of employees of the appellant railroad company, who testified that appellee was not suffering from any disability so far as ordinary work is concerned, and that while the grip of his left hand was lessened this resulted from non-use, and would be restored by use. The doctor further testified that appellee ". . . shows a transfiguration scar at the base of left thumb two inches long. He has full and free movement of the thumb in all directions with no limitation," and that appellee also had a scar on his upper lip, and over his eye, and that the damage to his teeth had been restored. The doctor further testified that appellee's blood pressure and vision were both normal. It also appears that after offering to resume his duties as a brakeman, appellee had secured and engaged in other employment, not so remunerative, but requiring the usual use of his hand.

It does not appear to what extent, if any, the jury reduced appellee's compensation, on account of his contributory negligence, but we conclude nevertheless, that any recovery exceeding $1,500 would be excessive, and unsupported by the testimony. It will not be necessary, however, to reverse the judgment to cure this error, provided a remittitur is entered for the excess. If within 15 days appellee enters a remittitur in the sum of $1,500, the judgment will be affirmed, otherwise it will be reversed, and the cause remanded for new trial.

MILLWEE, J., disqualified and not participating.